UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          :
                                                :
INTERNATIONAL HOME PRODUCTS,                    :
INC.; HEALTH DISTILLERS                         :
INTERNATIONAL, INC.                            :        CASE NUMBER 12-02997- ESL
                                                :
                                                :        CHAPTER 11
DEBTORS                                        :
                                                :
_____      :

OPINION AND ORDER

This case is before the court upon the Motion to Stay the Implementation of this Court's Order of October 22, 2012 (Dkt. No. 314) Regarding Turnover of Property (Docket No. 338) filed on November 27, 2012 by International Home Products, Inc. and Health Distillers International, Inc. (hereinafter referred to as the "Debtors" or "IHP" and "HDI").  The Order granted FirstBank Puerto Rico (hereinafter referred to as "FirstBank") request that the Debtors turnover to FirstBank any property foreclosed pre-petition by FirstBank, and which consequently, is not property of the estate (Docket No. 314).  This Order was appealed on November 2, 2012 to the United States District Court for the District of Puerto Rico ("District Court") (Docket No. 322).

The Debtors request that the October 22, 2012 Order be stayed until the District Court adjudicates on the pending appeal of a previous Order from this court (Docket No. 80). The previous Order which was appealed on May 25, 2012 to the District Court (Docket No. 112) held that FirstBank properly perfected its security interests with the 2011 financing statements pursuant to 19 L.P.R.A. §2152(2)(c) and, that Debtors attempt to terminate FirstBank's security interest by filing termination statements did not comply with 19 L.P.R.A. §2154. Thus, FirstBank may exercise its rights as a secured creditor and proceed according to the documents and the applicable law. The court further held that this Order shall have prospective effect starting on May 3, 2012 (Docket No. 80).

The Debtors as part of their motion to stay the Order pending the appeal of the same

incorporate the following issues on appeal; (i) "[w]hether the Bankruptcy [Court] erred when it ordered the turnover of property to a secured creditor because of an alleged pre-petition foreclosure when in the same case the Bankruptcy Court issued an Order granting the same secured creditor a security interest over the same collateral only with a prospective effect for a date that occurred after the petition and held hearings and issued orders regarding the use of cash collateral for the exact same allegedly foreclosed collateral allowing the Debtor's use of the collateral after the petition date;" (ii) [w]hether the Bankruptcy Court erred when it determined that it has jurisdiction to confirm the legitimacy of a pre-petition foreclosure when at the time of the pre-petition foreclosure a duly filed termination statement regarding the secured creditor's interest was in effect at the Puerto Rico Department of State;" and (iii) "[w]hether a secured creditor may foreclose on property when a termination statement is duly registered at the [Puerto Rico] Department of State terminating its security interest in collateral, a termination statement filed with full knowledge of the secured creditor, without first gaining a court order invalidating or challenging the termination statement" (Docket No. 338). Debtors also allege that they meet the four factor test under Fed. R. Bankr. P. 8005, whether these factors are viewed in isolation or in combination (Docket No. 338). FirstBank filed its Opposition to Debtors' Motion to Stay Order Granting the Bank's Request for Turnover on December 11, 2012 (Docket No. 345). For the reasons set forth below the motion is hereby denied.

## Background

IHP filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on April 19, 2012. HDI filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on May 7, 2012 (Case No. 12-03574). On April 25, 2012, IHP filed an Urgent Motion for Order under 11 U.S.C. §§105, 507(a)(4) and (5) Authorizing the Payment of Debtor's Pre-Petition Employee Benefits and Priority Wages (Docket No. 13). On April 26, 2012, the court granted IHD's urgent motion requesting authorization for the payment of Debtor's pre-petition employee benefits and priority wages (Docket No. 15). On April 26, 2012, FirstBank filed a Motion for Reconsideration of Order issued on April 26, 2012, Opposition to the Use of Cash Collateral by Debtor; Urgent Request for Adequate Protection and Emergency Hearing Thereon (Docket No. 18). The court on April 27, 2012 scheduled an emergency hearing for May 3, 2012 to consider various motions amongst which was included

FirstBank's motion for reconsideration of the April 26, 2012 Order, Opposition to the Use of Cash Collateral ; Urgent Request for Adequate Protection and Emergency Hearing (Docket No. 23). On April 27, 2012, IHD filed its Opposition to Debtor's Opposition to FirstBank's Motion for Reconsideration (Docket No. 24). On May 1, 2012, FirstBank filed its Reply to Debtor's Opposition to FirstBank's Motion for Reconsideration (Docket No. 35). On May 1, 2012, FirstBank filed a Motion to Inform of Foreclosure Request for Order and Objection to Assumption Agreement (Docket No. 36).  On May 2, 2012, IHP filed its Opposition to Debtor's Position with Respect to FirstBank's Motion to Inform Pre-Petition Foreclosure of Collateral and Debtor's Opposition to FirstBank's Objection to the Assumption of Contract with [American Enterprises International, Inc.] (Docket No. 43).

On May 3, 2012, a hearing was held to consider amongst several motions FirstBank's motion for reconsideration of this court's April 26, 2012 Order, its opposition to the use of cash collateral; its urgent request for adequate protection and emergency hearing requested by FirstBank. The court in this hearing rendered a bench ruling in which it held the following:

> "[a]fter considering the relevant motions and arguments by counsel, the Court agrees with FirstBank's position as follows: 19 L.P.R.A. §2[1]52(2)(c) allows the renewal of the filing of the financing statements without Debtor's signature to the extent that the same is to renew the security interest in collateral as to which the filing has had [*sic*] elapsed. FirstBank could file the financing statements without Debtor's signature according to §2[1]52(2)(c) under the facts of this case. Also, 19 L.P.R.A. §2[1]54 provides for termination notice under the conditions set forth in the section but by secured creditor not the Debtor. Consequently, the Court's opinion is that FirstBank validly renewed its UCC filing and financing statements and the Debtor could not ex-parte terminate the same. Therefore, FirstBank had a valid lien over Debtor's cash collateral. This holding will apply only to the cash collateral not to the lease payments. FirstBank is ordered to submit a proposed order for this limited issue, and provide a copy to Debtor's counsel.
>
> Having clarified that FirstBank released its lien with respect to any contract that had been purchased or will be purchased by American Enterprises International pursuant to the terms of the agreement, the Court approves Debtor's urgent motion for order authorizing assumption of executory contract with American Enterprises International, Inc. (dkt. #17). The parties are granted 14 days to file a joint proposed order.
>
> Debtor's motions for an order establishing adequate assurance payment for utilities under 11U.S.C. §366(c) for PREPA (docket entry #20), and for PRASA (docket entry #21) are granted as unopposed. A separate order will be entered.
>
> An audio record is to be filed" (Docket No. 53).

- 3 -

On May 8, 2012, IHP filed a Motion Requesting this Court to Alter or Amend its Preliminary Bench Order Issued on May 3, 2012 or in the Alternative Motion for this Court to Hold its Order in Abeyance (Docket No. 51). On May 15, 2012, the court's Order whereby it granted prospectively FirstBank's motion for reconsideration and thus, held that FirstBank has a valid security interest over Debtors' cash, assets and rents was entered (Docket No. 80).

On May 25, 2012, IHP filed a Notice of Appeal to District Court whereby it appealed this court's May 15, 2012 Order (Docket No. 110). Administrative consolidation of these two (2) cases was granted on June 1, 2012 (Docket No. 123). On June 22, 2012, the parties filed a Joint Motion Informing Settlement with First Bank as to the Use of Cash Collateral whereby the parties agreed to various terms including the following regarding the Debtors' accounts receivables: (i) accounts receivable of IHP: Puerto Rico: $36,416,128; Orlando: $3,167,969; Accounts Receivable of HDI: Puerto Rico $2,182,001.68; (ii) Debtors will surrender to [FirstBank], upon the entry of the order authorizing this Agreement, their portfolio of all accounts receivables of IHP and HDI as of the Petition Date, with an estimated aggregate book value of $41,766,098.68 as of the Petition Date, for an aggregated agreed value of $16,000,000; and (iii) "[a]s soon as this stipulation is approved, the Debtors and [FirstBank] will cooperate fully through the transition process in order to protect the [p]ortfolio for the benefit of [Firstbank] and the Debtors will provide full access to [FirstBank's] personnel to the [p]ortfolios and all information and documents, including the contracts and sales and accounting records related to the [p]ortfolios. Debtors will also transfer to [FirstBank] the physical documents related to the [p]ortfolios" (Docket No. 160). On July 2, 2012, the court approved the settlement agreement/stipulation (Docket No. 186). Substantive consolidation of these two (2) cases was granted on July 2, 2012 (Docket No. 185).

Subsequently, on August 3, 2012, FirstBank filed a Motion Requesting Immediate Turnover of Funds arguing that it is entitled to approximately $1.2 million in proceeds generated under the pre-petition foreclosed consumer sales contracts of IHP (foreclosed as of April 4, 2012) and HDI (foreclosed as of April 23, 2012) since these proceeds belong to FirstBank and thus are not property of the estate (Docket No. 214). In its Motion Requesting Immediate Turnover of Funds, FirstBank alleged that the instant case and the In re AA 10,000 Corp. case (Case No. 07-06601, Docket No.

57) were factually similar and in the latter this court held that the cash collateral foreclosed by a duly secured creditor prior to  a bankruptcy case filing extinguishes the debtor's interest and the estate' interest in the property (Docket No. 80). On August 6, 2012, the Debtors filed a Motion to Inform Intent to Oppose Motion Requesting Immediate Turnover of Funds (Docket No. 216). On August 16, 2012, the Debtors filed their Opposition to FirstBank's Motion for Turnover arguing that; (i) "FirstBank has now taken the inconsistent and ludicrous position that, despite asserting a post-petition security interest over the Debtors' property, FirstBank satisfied its security interest pre-petition by 'foreclosing' on Debtors' property;" and (ii) "...the Debtor[s] ha[ve] already surrendered *de jure* all of the [p]re-[p]etition account receivables and the parties are precisely working on this transition in order for the bank to take over the portfolios *de facto*. The portfolios surrendered by the Debtors include all of those receivables in Debtors' records as of the petition date, independently of the actions taken by the bank on April 4 and April 23, 2012. Therefore, all receivables, whether they were 'foreclosed' or not, have already been surrendered to the bank. The Debtor is submitting on a daily basis the payments received to the bank subject to the application of the surcharge approved by the Court" (Docket No. 237).  On August 24, 2012, FirstBank filed a Motion for Leave to File Reply to Dkt. 327 accompanied by its Reply to Debtors' Opposition to the Bank's Motion for Turnover arguing the following; (i) FirstBank has always contended that the proceeds from the foreclosed accounts belong to the bank, and not the estates; (ii) Debtors incorrectly informed their clients not to make the corresponding payments under the consumer contracts to FirstBank, and FirstBank had no choice but to send Debtors' counsel a letter dated July 2, 2012, requesting delivery of the amounts collected by Debtors from the foreclosed accounts; (iii) FirstBank reiterates that Debtors are unlawfully in possession of funds that belongs to the bank. Debtors have diverted the foreclosed funds from the Bank and used the proceeds from the consumer contracts without complying with the loan agreement subscribed with FirstBank; and (iv) FirstBank has not switched positions, since it is requesting the turnover of proceeds the Debtors received from the foreclosed accounts after the notice of foreclosure. From the date of such notice, the proceeds belong to FirstBank (Docket No. 246-1). On August 29, 2012, the court granted the motion (Docket No. 246) filed by FirstBank in reply (Docket No. 249).

On October 19, 2012, FirstBank filed a Motion in Request for Entry of Order for Dockets 214, 237 and 246-1 (Docket No. 313). On October 22, 2012, the court ordered the following: "[t]he motion filed by FirstBank PR (docket #113) is hereby granted. Debtor shall turnover to FirstBank PR any property foreclosed pre-petition by FirstBank PR and which, consequently, is not property of the estate" (Docket No. 314). On November 2, 2012, the Debtors filed their Notice of Appeal to District Court regarding this court's Order at Docket No. 314 (Docket No. 322). On November 15, 2012, the Debtors filed their Statement of Issues on Appeal presenting the following two (2) issues; (i) "[w]hether the Bankruptcy [Court] erred when it ordered the turnover of property to a secured creditor because of an alleged pre-petition foreclosure when in the same case the Bankruptcy Court issued an Order on May 15, 2012 granting the same secured creditor a security interest over the same collateral only with prospective effect for a date that occurred after the petition and held hearings and issued orders regarding the use of cash collateral for the exact same allegedly foreclosed collateral allowing the Debtors' use of cash collateral after the petition date;" and (ii) [w]hether the Bankruptcy Court erred when it determined that it has jurisdiction to confirm the legitimacy of a pre-petition foreclosure when at the time of the May 15, 2012 Order validating FirstBank's security interest was pending appeal in Case No. 12-1515 (JAF) and the issues raised in such appeal are the same issues raised here; whether the bank's security interest is a valid and perfected security interest" (Docket No. 328).

On November 27, 2012, the Debtors filed a Motion to Stay Implementation of this Court's Order of October 22, 2012 (Dkt. No. 314) Regarding Turnover of Property arguing that they meet the four factor test under Fed. R. Bankr. P. 8005 whether these factors are viewed in isolation or in combination (Docket No. 338). On December 11, 2012, FirstBank filed its Opposition to Debtors' Motion to Stay Order Granting the Bank's Request for Turnover arguing that Debtors fail to meet three (3) of the factors under Fed. R. Bankr. P. 8005 (Docket No. 345).

<u>Standard Under Fed. R. Bankr. P. 8005</u>

A motion for a stay pending appeal under Fed. R. Bankr. P. 8005 is determined pursuant to the four-part test for granting preliminary relief, that is,

- 6 -

(1) there is a likelihood of success on the merits of the appeal;

(2) the movant will suffer irreparable harm if a stay is not granted;

(3) the harm to the movant if the stay is not granted is greater than the injury to the opposing party if the stay is granted; and

(4) the public interest would not be affected by the issuance of the stay.

Pye v. Excel Case Ready, 238 F.3d 69 (1st Cir. 2001); In re Alfaro, 221 B.R. 927 (B.A.P. 1st Cir. 1998).

A motion for stay pending appeal is an extraordinary remedy and requires a substantial showing on the part of the movant. In re Lickman, 301 B.R. 739 (Bankr. M.D. Fla. 2003).  In order to grant the motion for stay pending appeal all four prongs must be satisfied.  In re Handel, 242 B.R. 789, 791 (Bankr. D. Mass. 1999).  Failure to meet the four prongs dooms the motion.  Eck v. Dodge Chemical Co. (In re Power Recovery Sys., Inc.), 950 F. 2d 798, 804.

Discussion

To find that there is a likelihood that Debtors will prevail on this particular appeal would simply mean that this court would have to vacate the two (2) Orders; namely the May 15, 2012 Order (Docket No. 80) and the October 22, 2012 Order (Docket No. 314), which is the one that Debtors request to stay pending the appeal of the same. The October 22, 2012 Order's holding is derived from the May 15, 2012 Order in which this court held that FirstBank properly perfected its security interests when it filed the financing statements on July 19, 2011, pursuant to 19 L.P.R.A. §2152(2)(c) and, that Debtors attempt to terminate FirstBank's security interest by filing termination statements did not comply with 19 L.P.R.A. §2154. Consequently, this court held in its October 22, 2012 Order, that FirstBank as a secured creditor was entitled to be turned over the property (meaning the proceeds generated from certain accounts receivables) which it foreclosed pre-petition, and thus are not property of the estate. The  court is not convinced by Debtors that it should vacate its Orders.

*The Two Orders*

On May 15, 2012, the court granted prospectively  FirstBank's motion for reconsideration and thus, held that FirstBank has a valid security interest over Debtors' cash, assets and rents. The court in its Order concluded the following:

- 7 -

"[t]herefore, for the reasons stated above, and as ordered on May 3, 2012, this Court holds that the Bank properly perfected its security interests with the 2011 Financing Statements, pursuant to 19 L.P.R.A. §2152(2)(c) and, that Debtor's attempt to terminate the Bank's security interest by filing the Termination Statements on February 16, 2012, had no effect because the termination statements did not comply with 19 L.P.R.A. §2154 and Debtor was not authorized by the secured party of record, the Bank, to file them. Accordingly, the Bank may exercise its rights as a secured creditor and proceed according to the documents and the applicable law. However, as previously stated by the Court, this Order shall have prospective effect starting on May 3, 2012. The Court is upholding its order of April 26, 2012, Dkt. 15, authorizing Debtor to pay the salaries as requested in this motion of April 25, 2012, Dkt. 13." (Docket No. 80).

Subsequently, on October 22, 2012, the Court upon FistBank's motion for turnover of property foreclosed pre-petition by FirstBank ordered the following:

"[t]he motion filed by FirstBank PR (docket #313) is hereby granted. Debtor[s] shall turnover to FirstBank PR any property foreclosed pre-petition by FirstBank PR and which, consequently, is not property of the estate" (Docket No. 314).

The court in the May 15, 2012 held that FirstBank had properly perfected its security interests by filing certain financing statements on July 19, 2011 in conformity with 19 L.P.R.A. §2152(2)(c). The court's finding that FirstBank is a secured creditor that properly perfected its security interests provided the basis for the October 22, 2012 Order. FirstBank, as a secured creditor, prior to IHP and HDI filing for bankruptcy on April 19, 2012 and on May 7, 2012 respectively, informed the Debtors through a formal notice of default (addressed to Mr. A Bert Foti) dated April 4, 2012 of the existing defaults and declared due and payable the entire unpaid principal amount of the loans, interest accrued and unpaid and all other amounts payable (Docket No. 18, Exhibit 5). Subsequently, FirstBank sent a letter dated April 13, 2012 to the Debtors' Comptroller regarding the legal basis for the assignment of the IHP and HDI accounts to FirstBank which is based on the loan agreement. FirstBank, pursuant to the loan agreement, exercised its right to collect the payments due under the consumer sales contracts and all other remedies to which it is entitled by law (Docket No. 36, Exhibit 1). Due to Debtors' defaults under the terms of the loan agreement, FirstBank foreclosed pre-petition certain consumer sales contracts by informing Debtors' clients pre-petition to send FirstBank any payments due or that became due under the consumer sales contracts (Docket No. 36, Exhibit 2, Docket No. 214, Exhibit 1). FirstBank, on May 22, 2012, provided Debtors' attorney with the list of the clients it had notified of the assignment of IHP and HDI's accounts (Docket No. 215). Thus,

the court concluded that the payments generated from the consumer sales contracts which were foreclosed pre-petition had to be turned over to FirstBank because the same were not property of the estate.

The Debtors' arguments for the first prong of the test, namely, that the there is a likelihood of success on the merits of the appeal are based on unsupported allegations and prior arguments which have already been adjudicated by the court. Debtors' arguments are the following: (i) "...on the date of the alleged foreclosure, there was a duly filed termination statement in the Puerto Rico Department of State terminating First Bank's security interest;" (ii) "[t]his Court has never issued any basis giving it jurisdiction to invalidate a duly filed termination statement retrospective to the date of the Bankruptcy Petition;" (iii) "...the alleged foreclosure occurred on April 4, 2012 but the petition date was on April 19, 2012. The Debtor contends that this time line is part of the reason why this Court issued an order granting First Bank's security interest only with 'prospective' effect;" (iv) "This Court has never held that First Bank's security interest was valid on April 4, 2012 and that the [t]ermination [s]tatements were invalid on April 4, 2012. Instead this Court held that as of May 3, 2012, with prospective effect, First Bank would hold a valid security interest. Accordingly, the Debtor contends that the turnover of property based on these alleged pre-petition foreclosures is invalid;" (v) "the Debtor also contends that the four hearings regarding the use of cash collateral and the joint stipulation governing the use of cash collateral all demonstrate that First Bank too knew that its alleged pre-petition foreclosure was not effective. Therefore, the Debtor's use of proceeds of the accounts receivable was governed by the joint stipulation regarding the use of cash collateral. The Debtor contends that the four hearings on this issue and the joint stipulation effectively invalidates First Bank's current position that it foreclosed on the property pre-petition" (Docket No. 338, pgs. 8-9).

The Debtors' first argument regarding the termination statements by the Debtors has already been adjudicated by this court. This court in its May 15, 2012 Order held that, "..Debtors attempt to terminate the Banks security interest by filing the termination statements did not comply with 19 L.P.R.A. §2154 and Debtor was not authorized by the secured party of record, the Bank, to file them" (Docket No. 80). Thus, the Debtors first argument that there was a duly filed termination

- 9 -

statement in the Puerto Rico Department of State terminating FirstBank's security interest is clearly contrary to the holding of this court's May 15, 2012 Order and lacks any legal support.

The second and third arguments are also based on conclusory allegations. The second argument questioning this court's jurisdiction to invalidate a duly filed termination statement retrospective to the date of the bankruptcy petition is unfounded as the court did not give a retrospective effect (to the date of the bankruptcy petition; namely April 19, 2012 for IHP and May 7, 2012 for HDI) to the termination statement which was filed on February 16, 2012 prior to the bankruptcy petition dates. The court, during the May 3, 2012 hearing held that its ruling and its effects will be prospective, because the court will not set aside its previous Order dated April 26, 2012 (Docket No. 15) authorizing use of cash collateral based upon the necessity that the employees be paid in order that Debtors' operations continue, and particularly if the grounds for requesting reconsideration of this Order are that payment was on account of unauthorized use of cash collateral. Moreover, at the time the court granted IHP's urgent motion for Order under 11 U.S.C. §§105, 507(a)(4) and (5) authorizing the payment of Debtor's pre-petition priority employee benefits and employee wages, FirstBank's secured creditor status with respect to the financing statement filed in 2011 had not been adjudicated by this court. Thus, the third argument based on Debtors contentions that the reason the court granted prospective effect to its first Order is due to the time line of the alleged foreclosures (April 4, 2012) and the petition date (April 19, 2012) is unfounded.

Debtors' fourth argument, is premised upon a holdling that this court simply did not make. Debtors' allege that, "...this Court held that as of May 3, 2012, with prospective effect, First Bank would hold a valid security interest." The court herein has already explained the limited reason as to why it held that its first Order would have a prospective effect. The court did not hold that FirstBank had a valid security interest as of May 3, 2012 despite the fact that it filed the new financing statement on July 19, 2011, this would be contrary to this court's October 22, 2012 Order.

Lastly, Debtors' argue that the four hearings regarding the use of cash collateral and the joint stipulation "...effectively invalidates First Bank's current position that it foreclosed on the property pre-petition" because it knew that its alleged pre-petition foreclosure was not effective. The Debtors in the joint motion informing the settlement regarding the use of cash collateral, specifically limited

their request for cash collateral to the use and sale of the inventory of IHP and HDI, free and clear of liens and as adequate protection the Debtors would make cash payments to FirstBank equal to the indubitable equivalent of the items needed from the IHP and HDI inventory as per the value at cost of each unit (Docket No. 160, pg. 3). As part of the settlement, the Debtors also agreed that they would surrender, their portfolio of all accounts receivables of IHP and HDI as of the petition date, with an estimated aggregate book value of $41,766,098.68 as of the petition date, for an aggregate agreed value of $16,000,000. FirstBank's position as to its proprietary interest of the pre-petition and post-petition proceeds stemming from the consumer sales contracts has been the same through this case which is simply that pursuant to the security agreement it is entitled to Debtors' receipts of whatever monies Debtors receive even if they receive monies from a third party such as American Enterprises International, Inc. The court fails to understand the basis for Debtors' argument that the four hearings and the join stipulation governing the use of cash collateral effectively invalidate FirstBank's position that it foreclosed on the property pre-petition. Thus, the court finds that the first prong of the test, namely, that the there is a likelihood of success on the merits of the appeal is not met.

As to the second prong, Debtors argue that they will suffer irreparable harm because they do not have the $853,000 that FirstBank is requesting nor can they generate these funds without incurring in a working capital deficiency. The Debtors argue that they "...will suffer the irreparable harm of potentially having its appeal mooted and potentially the complete loss of its operating capital should a stay not be granted." The court finds that invoking that an appeal will turn moot by the denial of a stay, is not sufficient by itself to demonstrate irreparable harm. "There is substantial authority, however, that the risk of an appeal being rendered moot does not in and of itself constitute irreparable harm, even if it may be a relevant factor." In re Calpine Corp., 2008 Bankr. Lexis 217, *12-14 (Bankr. S.D.N.Y. 2008). The court further finds that Debtors' argument regarding irreparable harm based on the complete loss of its operating capital and indirectly hinting substantial cessation or closure of business operations is based on Debtors' unsupported allegation. Moreover, while the court acknowledges that , "a threat to the continued existence of a business can constitute irreparable injury." See John B. Hull, Inc. V. Waterbury Petroleum Products, Inc., 588 F. 2d. 24, 28-

29 (2d. Cir. 1978), the Debtors have not met their burden of demonstrating that they will indeed suffer irreparable injury. Unsupported allegations do not suffice.

The court finds that the Debtors have failed to satisfy the first two (2) prongs of the test regarding the motion for stay pending appeal of the Order approving the turnover of pre-petition proceeds to FirstBank; thus it need not go any further with its analysis.

Conclusion

In view of the foregoing, the court finds that the Debtors have failed to establish a likelihood to succeed on the merits or show irreparable harm. Lastly, the court does not find public policy to be an issue at this juncture.

Therefore, Debtors' motion for stay pending appeal is hereby denied.

SO ORDERED.

Dated this 26th of December, 2012, in San Juan, Puerto Rico.

Enrique S. Lamoutte
United States Bankruptcy Judge

- 12 -